IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TONEY MAURICE KEITH,        :
AIS #196584                 :
    Plaintiff,              :
                            :
vs.                         :         CIVIL ACTION 13-71-KD-M
                            :
EMMA RUDOLPH, *et al.,*     :
    Defendants.             :
                            :

REPORT AND RECOMMENDATION

This § 1983 action, filed by Toney Maurice Keith, an Alabama prison inmate, proceeding *pro se,* was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Plaintiff's Complaint (Doc. 1), Defendants Emma Rudolph and Ray Farmer's Answer (Doc. 13) and Special Report (Docs. 19, 27), which the Court has converted into a Motion for Summary Judgment (Doc. 20), and Plaintiff's responses thereto.  (Docs. 21, 22, 26, 28).  After consideration of these pleadings and motions, and for the reasons set out below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action be dismissed without prejudice.

I.    Facts and Proceedings

Based on the record before it, the Court summarizes the parties' allegations as follows.  At the time Plaintiff

filed this Complaint, he was detained awaiting sentencing at the Escambia County Detention Center (ECDC). Plaintiff claims that while at ECDC, his right to religious freedom was infringed upon and that he was exposed to an ill-adapted bath stall and shower at the hands of Defendants. As Defendants, Plaintiff names Lieutenant Emma Rudolph and Captain Ray Farmer.[1] (Doc. 1 at 5).

Specifically, Plaintiff contends that "25 or more hams" were donated for Thanksgiving in November of 2012, and, as a result, Plaintiff believes he was served pork despite telling Defendant Farmer that he studies Islam, and does not eat pork. (Doc. 1 at 4-5). Plaintiff states that Defendant Farmer then slandered his religion by using profanity when he told Farmer about his religious beliefs.[2] (*Id.*). Plaintiff also contends that "Lieutenant Emma handles the mail, she took my books the Quran out and sent the others back to my family. Told me that they had not gotten here." (Doc. 1 at 4). Lastly, Plaintiff complains

---

[1] Defendants point out in their Answer (Doc. 13 at 1), that Plaintiff incorrectly identifies Defendant Farmer as Captain Ray Forman. (Doc. 13 at 1). The Court notes this correction and will refer to Defendant Farmer as such throughout this Report.

[2] It is well-settled that "derogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation." *Edwards v. Gilbert,* 867 F.3d 1271, 1274 n. 1 (11th Cir. 1989).

2

about "health issues of one rig[g]ed up bath stall and a shower they say its [sic] within regulations." (*Id.* at 5).

For relief, Plaintiff requests that Defendants "be charged and prosecuted and terminated, never to work at another facility in Alabama. To be comminsated [sic] in the amount of $1,250,000.00, my unconditional freedom and will to worship Islam where I choose to in America. (Doc. 1 at 7).

Defendants' Answer (Doc. 13) and Special Report (Doc. 19), and Supplement thereto (Doc. 27) deny all of Plaintiff's allegations and allege the affirmative defenses of failure to state a claim upon which relief can be granted and immunity, separately and severally.

Defendants Rudolph and Farmer submitted affidavits regarding Plaintiff's allegations (Docs. 19-1, 19-2), as well as the detention center's Nutrition Director, Della Lucille Howington.[3] (Doc. 19-3). Defendants Rudolph and Farmer, as well as Ms. Howington, aver that prior to, during, and after Thanksgiving of 2012, it was and is the

---

[3] Ms. Howington attests that she has been the nutrition director at ECDC for three years, and prior to that, she worked in the nutrition department at a public school for twenty-six years, seven of which, as manager. As nutrition director, she approves the menu that is served to inmates and is familiar with Plaintiff, who usually requests to be served bologna on most days and at most meals.

3

policy of ECDC that pork is not served to inmates. (Docs. 19-1, 19-2, 19-3 at 1, 1, 1). Inmates are routinely served beef, chicken, turkey, and fish, but not pork. (*Id.*). A book of labels reflecting what processed foods were served to inmates is regularly kept by Ms. Howington, relevant portions of which are submitted as an exhibit to her affidavit. (Doc. 19-3 at 1-2).

When ten to twelve hams were donated to ECDC for Thanksgiving in 2012, Defendant Farmer sought and received permission from the Sheriff to serve the donated hams to the inmates. (Docs. 19-1, 19-3 at 2, 2). Defendant Farmer then personally went to each cell block and asked which inmates did not want to be served ham. (*Id.*) Plaintiff was among the six to eight inmates who indicated they did not want to be served ham; they were served breaded chicken patties instead. (*Id.*). Ms. Howington's book of labels exhibit indicates that "King's Delight" breaded chicken patties were served. (Doc. 19-3 at 2, 4-6). The label suggests that the breaded chicken patties contain no pork or pork by-products. (Doc. 19-3 at 2, 5).

Defendant Farmer and Ms. Howington further state that the hams "were cooked separately from all other food in disposable pans that were purchased solely for that purpose. All food was served on styrofoam plates, and

4

plastic spoons were used. This was done to ensure that the breaded chicken breast patties did not come into contact with any pork or pork by-product." (Docs. 19-1, 19-3 at 2, 2). Defendant Farmer attests that at no time since he has been a supervisor at the jail has Plaintiff been given or been forced to eat ham or pork. (Doc. 19-1 at 3).

Regarding Plaintiff's religious books, Defendants Farmer and Rudolph attest that, for security and safety concerns, inmates at ECDC are not allowed to keep books in their cells, and that Plaintiff is aware of this policy. (Docs. 19-1, 19-2 at 2, 2). The only exception to this no-book rule allows inmates to keep a Bible or a Quran in their cells. (*Id.*). Defendants do not dispute that a box of books containing a Quran was delivered to ECDC for Plaintiff. (Doc. 19-2 at 2). Following the no-book policy, Plaintiff was allowed to keep the Quran, and the other books were returned to the sender. (*Id.*).

Defendants attest that this policy is applied equally to all inmates for their security and safety, and is not administered for the purpose of denying an inmate the ability to exercise his or her religion. (Docs. 19-1, 19-2 at 2-3, 2).

Plaintiff responded to Defendants' submissions with an unsworn "affidavit" which fails to offer anything of

5

relevance to bolster his allegations. (Doc. 22). He states that Defendants admitted to violating the "rules of administration" to satisfy their "need to discriminate between the minority and to please the majority of inmates due to the failing judgment of command." (*Id.* at 1). Plaintiff then requests the Court to "supenoa [sic] . . . the cameras of this jail in the mark [sic] of Nov[.] 2012 and Fe[b.] 2013 and view the cameras of the kitchen, the gym, and the entrances of the pork through the doors that when they received it to the kitchen where it was prepared, without styrofoam plates." (*Id.*). Plaintiff also poses questions to Ms. Howington asking why she didn't "tell them it was wrong to prepare that product. . . ." (*Id.* at 2-3).

On April 10, 2014, Defendants were ordered to supplement their Special Report with relevant case law as it relates to Plaintiff's allegations (Doc. 23), which they did. On May 2, 2014, Defendants filed their Supplemental Brief (Doc. 27) contending that Plaintiff's claims are due to be dismissed because they fail to state a claim for which relief can be granted, or are otherwise moot due to Plaintiff's sentencing and transfer to Kilby Correctional Facility, which occurred around April 23, 2014. (Docs. 26, 28).

II. Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED.R.CIV.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party

for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. *Haines v. Kerner,* 404 U.S. 519, 520 (1972). However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal,* 129 S.Ct. 1937. Furthermore, a court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal,* 556 U.S. at 681. And a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v.*

8

*Newsome,* 863 F.2d 835, 837 (11th Cir.), *cert. denied,* 493 U.S. 863 (1989).

### III. Discussion

#### a. 42 U.S.C. § 1997e(e)

"In an effort to stem the flood of prisoner lawsuits in federal court, Congress enacted the Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA")." *Harris v. Garner*, 216 F.3d 970, 971 (11th Cir.), *cert. denied*, 532 U.S. 1065 (2001). Included in the PLRA is 42 U.S.C. § 1997e(e), which provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). For the purposes of this section, a prisoner is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997(h). This section, therefore, applies to Plaintiff who was a prisoner when he filed this action.

Section 1997e(e) is "[r]ead as a limitation on a damages remedy only[.]" *Harris v. Garner*, 190 F.3d 1279,

9

1288 (11th Cir. 1999) (finding that the Constitution does not "mandate[ ] a tort damages remedy for every claimed constitutional violation"), *opinion vacated by* 197 F.3d 1059, *opinion reinstated in part by* 216 F.3d 970 (11th Cir. 2000). By enacting § 1997e(e), "Congress has chosen to enforce prisoners' constitutional rights through suits for declaratory and injunctive relief, and not through actions for damages." *Id.* at 1289. This section "applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir.), *cert. denied*, 540 U.S. 1112 (2004). The statute's clear and broad language encompasses all claims, including constitutional claims, and provides for no exceptions. *Al-Amin v. Smith*, 637 F.3d 1192, 1197 (11th Cir. 2011). Moreover, no distinction is made between "constitutional claims frequently accompanied by physical injury (e.g., Eighth Amendment violations) and those rarely accompanied by physical injury (e.g., First Amendment violations)[;]" all constitutional claims are treated equally. *Id.*

Under § 1997e(e), a claim for nominal damages may proceed, but if such a claim were successful, the amount to be awarded would be only nominal. *Id.* Plaintiff requested

$1,250,000.00 in damages (Doc. 1 at 7), which is not a nominal damages request. *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (holding if plaintiffs were entitled to nominal damages for the mere violation, the damages should not exceed one dollar); *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999) ("[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury."); *Qualls v. Santa Rosa County Jail*, No. 3:10cv54/MCR/MD, 2010 WL 785646, at *3 n.1 (N.D. Fla. Mar. 4, 2010) (unpublished) (dismissing the plaintiff's complaint as it "cannot be liberally construed as requesting nominal damages, because he specifically requested only $250,000 in compensatory and/or punitive damages"); *Harrison v. Myers*, CA No. 10-0566-KD-N, 2011 WL 3204372, at *7 (S.D. Ala. July 13, 2011) (unpublished) (finding that the prisoner's request of $2,500 was not for nominal damages inasmuch as nominal damages implies a mere token or trifling); *In re Bayside Prison Litigation*, CA 09-2365(RBS/JS), 2010 WL 4916716, at *4 (D.N.J. Nov. 23, 2010) (unpublished) (finding that "$2,000.00 surely surpasses the limit of what constitutes a 'minimal' amount of compensation by any definition of the term 'nominal'").

With no request for nominal damages, the remaining types of damages are compensatory and punitive damages. However, Plaintiff may only recover compensatory and punitive damages if he sustained an injury that is greater than *de minimis*. *Harris v. Garner, supra*, 190 F.3d at 1286. Though Plaintiff does not specifically identify his request for $1,250,000.00 as being for either compensatory or punitive damages, the Court finds that even a liberal construction of Plaintiff's Complaint does not satisfy the "more than *de minimis* injury" inquiry to sustain a claim for compensatory or punitive damages as a result of being served pork. In fact, Plaintiff does not identify any type of injury that he suffered at the hands of Defendants. Even so, The Court finds Plaintiff's allegations to be conclusory and unsupported by the record. Based on Defendants' submissions, the Court has serious doubt that Plaintiff was actually served pork as Defendant Farmer attests that he personally ensured that those inmates who did not want to be served pork, were not served pork, but breaded chicken patties, instead. (Doc. 19-1 at 2).

Moreover, Plaintiff's allegations are directly refuted by Ms. Howington's affidavit which states that the King's Delight breaded chicken patties were instead served to inmates not wanting ham (Doc. 19-3 at 2, 5), that the hams

were prepared separately from all other food in disposable pans that were purchased solely for that purpose, and further, that all food on that day was served on Styrofoam plates with plastic spoons to ensure that the breaded chicken patties did not come into contact with any pork or pork by-product. (Docs. 19-1, 19-3 at 2, 2).

Accordingly, the Court finds that even construing the Complaint in the light most favorable to him, Plaintiff fails to demonstrate more than a *de minimis* injury sufficient to allege a constitutional violation. *See Badger v. Parsons,* 2009 WL 2634073, at *6-*7 (S.D.Ga. Aug. 26, 2009)(unpublished)(stating that any physical injury stemming from the pain and suffering allegedly suffered by being served pork is insufficient to support a compensatory or punitive damages claim); *Perkins v. Byrne,* 2012 WL 4794567 (S.D.Ala. Sept. 14, 2012)(unpublished)(under 1997e(e), Plaintiff could not state a constitutional claim for more than nominal damages as a result of being served pork after informing jail staff that his religious preference was Islam); *see also Smith v. Allen,* 502 F.3d 1255, 1271 (11th Cir. 2007), abrogated on other grounds, *Sossamon v. Tex.,* __ U.S. __, 131 S.Ct. 1651 (2011)(noting that punitive damages may not be recovered under the PLRA for pure emotional injury); *Geiger v. Jowers,* 404 F.3d

371, 374-75 (5th Cir. 2005) (holding that prisoner's First Amendment retaliation claim was barred by § 1997e(e)); *Royal v. Kautzky,* 375 F.3d 720, 723 (8th Cir. 2004) (collecting cases applying § 1997e(e) to First Amendment cases).

Moreover, the Court finds Plaintiff's contention that Defendants knowingly violated ECDC's no-pork policy (Doc. 22 at 1-2), unpersuasive since prison regulations are not intended to confer rights or benefits on inmates, but are merely designed to guide correctional officials in the administration of prisons. *See Sandin v. Conner,* 515 U.S. 472, 481-82, (1995); *see also Buckner v. Allen,* 2014 WL 791370, at *10 (M.D.Ala. Feb. 24, 2014)(violations of departmental rules or regulations do not, standing alone, infringe on an inmate's federal constitutional rights); *U.S. v. Caceres,* 440 U.S. 741, 751-52 (1979)(mere violations of agency regulations do not raise constitutional questions).

In addition to Plaintiff's allegations about being fed pork, § 1997e(e) also bars his claims regarding the religious books that he was not allowed to keep in his cell. Plaintiff contends that his "civil and constitutional rights of [his] religion" were violated by

Defendant Emma Rudolph when she opened his mail, allowed him to keep only a Quran in his cell and sent the rest of his religious books back to the sender. (Doc. 1 at 5). In response, Defendant Rudolph attests that Plaintiff is familiar with the book policy prohibiting inmates from keeping books in their cells for security and safety reasons and that it is applied equally to all inmates without intent to infringe on inmates' religious freedom. (Doc. 19-2 at 2). Again, Plaintiff asserts no physical injury resulting from ECDC's no-book policy. (Doc. 1).

Reapplying the § 1997e(e) analysis above, and Plaintiff having alleged no physical injury, the Court concludes that Plaintiff cannot proceed on these claims for nominal, compensatory or punitive damages in the requested amount of $1,250,000.00. *See Al-Amin v. Smith,* 637 F.3d 1192, 1195-96 (11th Cir. 2011)(inmate's First Amendment claim for opening legal mail outside of his presence was barred by § 1997e(e) as no physical injury was associated with defendants' actions); *Smith,* 502 F.3d 1255, 1260-61, (observing that § 1997e(e) barred compensatory and punitive damages for the denial of the inmate's First Amendment right to certain religious items as no physical harm was alleged).

      b. Remaining Claims For Relief

For relief, Plaintiff requests that Defendants "be charged and prosecuted and terminated, never to work at another facility in Alabama. . . my unconditional freedom [and] will to worship Islam where I choose to in America." (Doc. 1 at 7). Requests for prosecution and unconditional freedom are injunctive requests for relief, which § 1997e(e) does not bar from procession. However, a federal court does not involve itself in a state employee's relationship with his employer. *Newman v. Alabama,* 559 F.2d 283, 288 (5th Cir.), *cert. denied,* 438 U.S. 915 (1978)(federal courts have no authority to address state officials out of office or to fire state employees or to take over the performance of their functions); *Harris v. Whitehead,* 2007 WL 2300964, at *1 (M.D.Ala. Aug. 8, 2007)(unpublished)(federal court had no authority to discharge prison official as that decision was for the supervisors to make); *Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375, 379-82 (2d Cir. 1973)(A court is precluded from ordering a prosecution by the United States Attorney based on the separation of powers doctrine and because the determination of whether to commence a prosecution is a process that was not contemplated for the courts to engage in and, therefore, the courts are not equipped to handle a prosecution).

Plaintiff's request for unconditional freedom inherently requests that he be released from custody so that he may practice his religion wherever he so chooses in America. However, release from incarceration is not a remedy that is available in a § 1983 action. *McDonald v. Neal,* 2013 WL 6410402, *5 (S.D.Ala. Dec. 9, 2013)(*citing Abella v. Rubino,* 63 F.3d 1063, 1066 (11th Cir. 1995). Rather, to gain release from incarceration, Plaintiff must file a habeas corpus action. *Id.*

Lastly, Plaintiff makes a bare-bones allegation for "health issues" regarding a "rig[g]ed up bath stall and shower . . . ." (Doc. 1 at 5). To the extent that Plaintiff even raises an Eighth Amendment claim of deliberate indifference, that claim is deemed moot since, after filing his Complaint, Plaintiff was sentenced and transferred to Kilby Correctional Facility. (Docs. 26, 28). The general rule in this Circuit is that a transfer or release of a prisoner from a correctional facility will moot that prisoner's claims for injunctive and declaratory relief. *Perkins,* 2012 WL 4794567, at *3; *see also, Spears v. Thigpen,* 846 F.2d 1327, 1328 (11th Cir.), *cert. denied,* 488 U.S. 1046 (1989)("an inmate's request for injunctive relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred").

IV. Conclusion

Based on the foregoing reasons, this Court concludes that Plaintiff's allegations are insufficient to raise a genuine issue of material fact; thus, Defendants Rudolph and Farmer are entitled to Summary Judgment in their favor on all claims asserted against them by Plaintiff Toney Maurice Keith. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action against these Defendants be dismissed without prejudice,[4] and that judgment be entered in favor of Defendants Rudolph and Farmer and against Plaintiff on all claims.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. In order to be specific, an objection must identify the specific finding or

---

[4] "Dismissal under this statutory provision of a claim that is filed during confinement should be without prejudice to re-filing the claim if and when the plaintiff is released." *Harris v. Garner,* 216 F.3d 970, 980 (11th Cir. 2000).

recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 12th day of May, 2014.

                                            s/BERT W. MILLING, JR.
                                            UNITED STATES MAGISTRATE JUDGE